IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| LOREAN T. WOLFE, | ] |
| Plaintiff, | ] ] ] |
| vs. | ] No. 2:17-CV- |
| TIDEWATER TRANSIT CO., INC., | ] ] ] |
| Defendant. | ] |

**COMPLAINT**

Plaintiff Lorean Wolfe files her complaint for sex/gender discrimination and age discrimination in employment and for cause of action against the defendant employer and avers:

1. The Court is empowered to hear the plaintiff's federal employment discrimination/retaliation claims pursuant to its federal question jurisdiction codified at *28 U.S.C. §1331*. The plaintiff's sex/gender discrimination claims are premised upon the provisions of Title VII of the 1964 Civil Rights Act, as amended, and as codified at *42 U.S.C. §2000e-2, §2000e-3,* and *§2000e-5*. The plaintiff's age discrimination claims are premised upon the provisions of the Age Discrimination in Employment Act (ADEA), codified at *29 U.S.C. §623* and *§626*.

2. The plaintiff is a white female, 65-years-of-age. She resides in Kingsport, Sullivan County, Tennessee. At the time the plaintiff was discriminatorily discharged by Tidewater Transit (TWT), Mrs. Wolfe was 63-years-of-age and had worked for Tidewater for sixteen years as a dispatcher.

3. Tidewater Transit Co., Inc., a/k/a TWT, is a southeastern-based trucking company which transports liquids and dry freight all over the United States. Tidewater Transit maintains its corporate headquarters at at 6174 U.S. Highway 70W, La Grange, North Carolina 28504. The company's registered agent for service of process in Tennessee is listed as Roland M. Lowell at 7135 Centennial Place, Nashville, TN 37209-1033. Tidewater Transit employs more than 500 individuals and has trucking terminals in several southeastern states. The defendant employer's Sullivan County, Tennessee address is 1045 Tidewater Court, Kingsport, TN 37664.

4. Plaintiff Wolfe worked at the defendant's Kingsport, Tennessee terminal. James Daugherty was the Kingsport terminal manager when the plaintiff was discriminatorily discharged because of her age and her sex.

5. As a dispatcher, plaintiff Wolfe located drivers for TWT deliveries and handled the paperwork for each trailer load assigned during her shift. The plaintiff assigned available drivers to make the over-the-road delivery trips involving liquid chemicals and plastic chips which were known as dry bulk

2

shipments.

6. The plaintiff avers that Tidewater Transit manufactured a fabricated February 2015-criticism to excuse its discriminatorily discharging the plaintiff because of her age and sex. Tidewater had a "pick up" order for a load of plastic chips contained in a Norfolk and Southern railcar in Bristol, Virginia. Defendant Tidewater refers to the tanker trailers which carry the plastic chips as "hoppers." The Tidewater Transit driver was supposed to load the chips and deliver them to a customer in Chilhowie, Virginia, approximately 50 miles away.

7. Tidewater terminal managers assigned hopper/trailer #1007 for the delivery of the chips. Hopper/trailer #1007 had just been utilized to deliver a different type of plastic chips manufactured by Eastman Chemical Co. to a customer in Decatur, Georgia. As part of her job duties, the plaintiff had dispatched the Eastman chip load to Decatur, Georgia several days before in hopper/trailer #1007.

8. Defendant's trailer #1007 had been returned to the company's Kingsport lot after the Decatur run. It could have carried another load of the same Eastman plastic chips back to Decatur without being cleaned. But because the trailer was going to be used to transport a different type of plastic chip product, it had to be cleaned in Tidewater's "hopper bay."

9. The defendant company maintained an excel spread sheet program

known as a "hopper board" which listed each hopper/tanker, where it had been last, and the product it had last contained. Manufacturers and shippers contacted the Kingsport Tidewater office to place a shipment order. At the time, Kristi Hyder took the orders by telephone, e-mail, or fax, and set up the order in the company's computer system. Ms. Hyder utilized the information on the hopper board to advise the customer when its load would be picked up and delivered and which trailer would be used. Ms. Hyder is a younger lady in her thirties.

10. As part of her job duties, Ms. Kristi Hyder prepared a "clean sheet" and physically gave it to the company's hopper bay cleaning staff. The "clean sheet" was the company's directive to the hopper bay staff to clean out the about-to-be dispatched hopper/trailer and put new seals on it. The hopper bay crew was supposed clean the hopper, put new seals, on it, and then "sign-off" on the "clean sheet" to confirm that the cleaning and resealing process had been completed and the trailer was ready to be loaded. The hopper bay clening crew was composed of younger men.

11. In the early February 2015 situation with hopper/trailer #1007, the plaintiff assigned Richard Crawford, an experienced driver in his forties, to drive the trailer to Bristol, Virginia, load it with plastic chips from the Norfolk and Southern rail car, and transport the chips to the Chilhowie, Virginia, customer. The arrangement called for Crawford to make four loading and delivery trips between

the rail car in Bristol and the Chilhowie, Virginia customer.

12. Driver Crawford came by the office in the early morning before any dispatchers arrived, and picked up the "load and unload sheet" information which the plaintiff had prepared for the series of deliveries of the plastic chips to the Chilhowie customer. Plaintiff Wolfe knew that she had not seen a "clean sheet" for trailer #1007 when she left the terminal at the end of the prior office workday. However, the practice at the defendant's terminal was for the "hopper" crew to clean the trailer and then place the appropriate "clean sheet" in the driver's box after regular office hours.

13. The plaintiff initially assumed that routine operational procedure had taken place in hopper/tanker #1007's case. Company protocols also required the delivery driver to telephone the Kingsport dispatcher if he saw that any of the new shipment paperwork were missing.

14. Unfortunately, the younger male hopper cleaning crew had not properly performed its job duties, had not cleaned the hopper, had and had not signed off on a new "clean sheet" for the hopper/trailer #1007. Male driver Crawford apparently searched the dispatcher's office for any kind of cleaq sheet instead of simply taking the paperwork from his "box" or tray and questioning the absence of an authenticated clean sheet. Crawford mistakenly picked up a "clean sheet" from the former completed Decatur chip delivery and drove off the

5

defendant's lot with a "dirty" hopper/trailer. Crawford did not take the time to read the old "clean sheet" or he would have realized he was taking a dirty hopper/trailer instead of a clean one. Neither had male driver Crawford checked to see whether hopper/tanker #1007 had new seals installed on it as he was supposed to do under company protocols.

15. Driver Crawford realized his mistake after he had loaded the still "dirty" hopper #1007 in Bristol, driven to Chilhowie, and unloaded the chips in the customer's storage silo. He telephoned the defendant's office and confirmed his mistake. Crawford's mistake had contaminated the Chilhowie customer's silo with some of the Eastman plastic chips and residue which had been left in the still "dirty" hopper/trailer.

16. On February 19, 2015, terminal manager Daughtery called Mrs. Wolfe into her office and announced that the company had completed the investigation of the February 4 "hopper/tanker contamination episode." Daughterty told the plaintiff that the company had determined the plastic chip contamination was her "fault." Daughtery then summarily discharged plaintiff Wolfe.

17. By comparison, defendant Tidewater Transit disciplined the younger male driver Crawford by suspending him for less than a week. The company did not discipline the younger Ms. Hyder or the derelict younger male

hopper bay cleaning crew. The defendant company discriminatorily blamed the plaintiff for the contamination episode because she is an older woman and then discharged her.

18. The defendant has a history of discriminating against older female employees and of having EEOC age discrimination charges filed against it. Its managers were well aware of the applicability of the ADEA and Title VII of the 1964 Civil Rights Act to its employment relationship with the plaintiff.

19. As part of its developing pattern of age and sex discrimination against the plaintiff, the defendant had created bogus reprimands to "build a file" on the plaintiff. In June 2013, customer Eastman Chemical Co. had complained about not receiving information about the status of loads it had shipped with Tidewater Transit. Other Tidewater Transit office employees - not the plaintiff - were involved in the mis-communication episode with Eastman Chemical Co. The plaintiff received e-mails from co-workers which confirmed that the mis-communication was not her responsibility or fault.

20. Despite knowing that the plaintiff had not caused the Eastman mis-communication situation terminal manager Daughtery gave plaintiff Wolfe a pretextual warning letter. Daughtery admitted to Mrs. Wolfe at the time that the reprimand was not justified. But when Tidewater discharged the plaintiff in February 2015, Daughtery and the company insisted that the "unjustified" 2013-

warning letter was an official "Offense" which supported her being discharged.

21. During 2014, Tidewater Transcipt had been "dropping off" hopper/trailers at Albemarle, a specialty chemical company in Orangeburg, South Carolina for it to use for extended periods of time. Another office employee, Lisa Holt had apparently done rental billing for the trailers during early 2014. The plaintiff learned after she had been discharged in February 2015, that the company's male managers had told Ms. Holt, who is ten years younger than plaintiff Wolfe, to stop billing for the trailer rentals in April 2014. Ms. Holt left the company shortly thereafter. None of the company's male managers ever told the plaintiff to re-start billing anyone at Albermarle for the trailer rentals.

22. When defendant's corporate managers discovered that no rental billings had been performed since April 2014 and criticized the Kingsport male managers for the lapse, the male managers shifted the blame to the plaintiff because the plaintiff was an older woman. Tidewater Transit local male managers issued two written warnings to Mrs. Wolfe over their failure to bill for the Albermarle trailer rentals, one in December 2014 and one in January 2015.

23. Defendant Tidewater Transit deliberately, maliciously, and discriminatorily blamed Mrs. Wolfe for these series of mistakes made by male managers, the younger male driver, the younger male hopper bay cleaning crew, and the younger female office employee in order to contrive pretexts to discharge

her because of her age and/or because of her gender. Tidewater Transit had stopped giving the plaintiff annual pay raises in 2012.

24. After Tidewater Transit discharged the plaintiff, the company replaced her with former employee Lisa Holt. Ms. Holt is approximately ten (10) years younger than the plaintiff.

25. The plaintiff avers that the reasons given by Tidewater Transit for discharging her are prextexts for age discrimination and/or gender discrimination. The plaintiff had been performing her work in a satisfactory manner for years. When Tidewater Transit determined to blame the plaintiff for the contamination mistakes made by the younger Ms. Hyder, the younger male hopper bay cleaning crews, and the younger male driver Crawford, discharged her, and then replaced her with a younger person, it committed additional unlawful age discrimination and sex discrimination.

26. Defendant Tidewater Transit's employment discrimination has been deliberate, willful, and in reckless disregard of the plaintiff's federally protected rights. The plaintiff has been humiliated and embarrassed. She has suffered mental distress. Her enjoyment of life has been diminished and her earning capacity has been impaired. The plaintiff has lost wages and will continue to lose wages in the future. Plaintiff Wolfe has not been able to locate comparable employment in the area.

27. The defendant publishes and maintains anti-discrimination policies which explain its employees Title VII and ADEA rights. Defendant's Kingsport managers were aware of their company's anti-discrimination employment policies and regulations. Even with this knowledge of their own company anti-discrimination policies, defendant's local male managers deliberately, maliciously, and willfully violated their own corporate policies and the plaintiff's Title VII and ADEA rights as described above.

28. Plaintiff Wolfe is entitled to an award of compensatory damages and an award of punitive damages from Tidewater Transit for its Title VII violations. The plaintiff is entitled to all money damages allowed by the ADEA including liquidated damages from the defendant for its willful, deliberate, and bad faith age discrimination. The plaintiff is entitled to lost wages and lost benefits under both Title VII and the ADEA. The plaintiff is also entitled to an award of front pay from Tidewater Transit under both Title VII and the ADEA.

29. The plaintiff has filed her discrimination charges with the EEOC, has received her right-to-sue letter, and has exhausted her administrative remedies.

WHEREFORE, THE PLAINTIFF DEMANDS:

1. Judgment against the defendant for all compensatory damages allowed by Title VII and *42 U.S.C. §1981a*.

2. Judgment against the defendant for all punitive damages allowed by Title VII and *42 U.S.C. §1981a*.

3. All money damages allowed the plaintiff by the ADEA.

4. An award of liquidated damages against the defendant for its wilful, malicious, and bad faith violation of the ADEA.

5. An award of lost wages and employment benefits under Title VII and the ADEA.

6. A jury to try the plaintiff's claims.

7. Reinstatement to her position as dispatcher, or an award of front pay from the defendant.

8. An award of attorney's fees as allowed by Title VII and/or the ADEA to the plaintiff as the prevailing party.

9. Such other relief as will make the plaintiff whole.

Respectfully Submitted,

s/ C. R. DeVault, Jr.
CHARLTON R. DEVAULT, JR.
TN BPR #000428
102 Broad Street
Kingsport, Tennessee
(423) 246-3601
ATTORNEY FOR THE PLAINTIFF